UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Mireya Perez-Ichaso,** | **Civil No. 06-4269 (DSD/SRN)** |
| **Plaintiff,** | |
| v. | **REPORT AND RECOMMENDATION** |
| **Michael J. Astrue, Commissioner** **of Social Security,** | |
| **Defendant.** | |

Jennifer Mrozik, Esq., 1611 West County Road B, Suite 106, Roseville, Minnesota, 55113, on behalf of Plaintiff

Lonnie F. Bryan, Esq., Office of the United States Attorney, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, on behalf of Defendant

SUSAN RICHARD NELSON, United States Magistrate Judge

Pursuant to 42 U.S.C. § 405(g), Plaintiff Mireya Perez-Ichaso seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), who determined that Plaintiff was not statutorily disabled and therefore not entitled to disability insurance benefits or supplemental security income. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The matter was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

The parties have filed cross-motions for summary judgment. For the reasons set forth below, this Court recommends that Plaintiff's motion be denied and Defendant's motion be granted.

## I. BACKGROUND

### A. Procedural History

On September 15, 2003, Plaintiff filed applications for disability insurance benefits (DIB) and supplemental security income (SSI). (Admin. R. at 17, 60-62.) She alleged that her disability began on November 15, 1999, due to arthritis in both knees, edema in both legs, and lumbar disc degeneration and subluxation of lumbar vertebrae. (Id. at 60-61, 66-67, 82.) Plaintiff's insured status expired on June 30, 2006. (Id. at 63.)[1]

Plaintiff's applications were denied initially and on reconsideration. (Id. at 28-31, 35-39, 42-44.) Plaintiff therefore requested an administrative hearing. (Id. at 45.) On July 1, 2005, an Administrative Law Judge (ALJ) held a hearing at which Plaintiff appeared with her counsel. (Id. at 325.) Dr. Elmer Martinson testified as a medical expert, and Barbara Wilson-Jones testified as a vocational expert. (Id.) On October 17, 2005, the ALJ denied Plaintiff's DIB and SSI claims. (Id. at 17-25.)

Plaintiff requested review of the ALJ's decision. (Id. at 11.) On August 19, 2006, the ALJ's decision became final when the Appeals Council denied Plaintiff's request for review. (Id. at 6-8.) Plaintiff now seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

### B. Factual Background

Plaintiff was forty-seven years old, a "younger individual," on the date of the ALJ's decision. (Admin. R. at 329.) She graduated from high school and had past work experience as a bartender and warehouse worker. (Id. at 83, 330.) Plaintiff's daily activities consisted of

---

[1] To be eligible for DIB, a claimant must show that she was disabled on or before the date her insured status expired. See 20 C.F.R. § 404.131.

cooking, washing dishes occasionally, shopping with her partner, doing jigsaw puzzles, renting movies, paying bills, watching television, talking on the telephone, and socializing with other tenants. (Id. at 336-39.) Plaintiff did not clean, vacuum, wash laundry, or read. (Id.)

Plaintiff testified at the administrative hearing that she could not work due to pain and swelling in her knees and legs. (Id. at 332.) She has not had surgery on either knee and did not take any medication to help reduce the swelling. (Id. at 332-34.) In the past, she had taken Lasix, a diuretic, but preferred to elevate her legs rather than take medication. (Id. at 332-33, 352.) Plaintiff also testified that she had low back pain for which she took pain medication. (Id. at 333.) She stated that the pain medication caused her to feel drowsy. (Id.) She has not had surgery or trigger point injections for her back pain, nor has she tried a TENS unit or nerve blocks. (Id. at 101, 333-34.)

Plaintiff testified that, because of pain, she could stand for only twenty minutes and walk a city block in ten to fifteen minutes. (Id. at 334-35.) Plaintiff experienced pain after sitting for one hour, and swelling after sitting for two hours. (Id. at 335.) Plaintiff had problems with balance because her knees, especially her right knee, gave out on her. (Id. at 343.) Plaintiff testified that she used a cane all the time, could not bend over to pick up an object, and could lift only five or ten pounds. (Id. at 334-36.) She could reach overhead and use her fingers and hands for gripping and grasping. (Id.)

### C. Medical Evidence

Plaintiff has a history of gastroesophageal reflux disorder (GERD) and asthma. (Id. at 171, 195.) In 2002 and 2003, Plaintiff went to the emergency room at Hennepin County Medical Center (HCMC) on several occasions for treatment of GERD. (Id. at 177, 179, 187, 193, 201.)

In 2002, Plaintiff also sought treatment at HCMC for heartburn, knee pain, low back pain, and acute neck strain. (Id. at 181-82, 200, 203.) She was diagnosed with patellofemoral syndrome, chronic knee pain, degenerative joint disease, GERD, low back pain, muscle strain, and neck strain. (Id. at 181-82, 185, 200, 203.)

On January 25, 2002, Catherine Rose, a nurse practitioner, noted that Plaintiff suffered from chronic right knee pain with exacerbated patella femoral syndrome. (Id. at 258.) Ms. Rose also opined that Plaintiff was limited to sedentary-type work. (Id.) On June 20, 2003, Plaintiff underwent testing for diabetes and was diagnosed with diabetes mellitus. (Id. at 232-33.) Plaintiff began taking Actos to help control her diabetes. (Id. at 215-16, 220, 222.)

On September 11, 2003, Dr. James Larson saw Plaintiff for bilateral knee pain. (Id. at 213.) On examination, Plaintiff had no swelling or effusion in her knees and full foot and ankle range of motion. (Id. at 213.) Dr. Larson assessed patellofemoral crepitus and patellofemoral chondromalacia for which he recommended physical therapy. (Id. at 213-14.) He also noted that Plaintiff weighed 300 pounds and should lose weight, which would also "dramatically improve her knee discomfort." (Id. at 214.) Plaintiff refused to try anti-inflammatory medication at that time. (Id.) An x-ray showed only a minimal degenerative change within the medial compartment of the right knee. (Id. at 293.)

Plaintiff saw Dr. Gary Baker on October 23, 2003, for an evaluation of her knee and back problems. (Id. at 229.) Dr. Baker noted that Plaintiff had slight crepitance and slight loss of flexion in her knees, and tenderness to palpation over the paraspinal muscles in her lower back. (Id. at 228.) Her ankles and feet were within normal limits, and she had normal symmetric reflexes. (Id. at 229.) Plaintiff also had good range of motion in her shoulders and hips, and no

4

swelling or synovitis in her hands, wrists, elbows or shoulders. (Id. at 229.) Dr. Baker reported that Plaintiff was grossly obese at 324 pounds. (Id. at 229.) He diagnosed Plaintiff with knee pain, back pain, a history of diabetes, GERD, and asthma. (Id. at 228.) He recommended that Plaintiff try nabumetone to treat inflammation and pain and cyclobenzaprine, a muscle relaxer. He also ordered MRI scans of Plaintiff's knees and lumbosacral spine. (Id.)

On October 24, 2003, Dr. Anne Pereira examined Plaintiff and noted that Plaintiff was in no acute distress. (Id. at 280.) She remarked that Plaintiff had chronic back pain with occasional flares, but that there were no new or unusual symptoms associated with the pain at that time. (Id.) Dr. Pereira observed tenderness in the lumbar area but negative straight leg raising and normal deep tendon reflexes in the lower extremities. (Id.) Plaintiff had no leg numbness, weakness, tingling, or pain. (Id.) Dr. Pereira prescribed narcotic pain medication for nighttime use and anti-inflammatory medication for daytime. (Id.)

On November 11, 2003, MRI scans of Plaintiff's knees revealed chondromalacia of the patella in both knees. (Id. at 237-40.) The MRI also showed degenerative changes at the patellofemoral joint and mild osteoarthritis in the left knee. (Id. at 238.)

In December 2003, Dr. Aaron Mark, a state agency physician, reviewed the record and opined that Plaintiff was capable of light exertional work with some limitations on climbing, balancing, stooping, kneeling, crouching, and crawling. (Id. at 241-48.) On January 29, 2004, Dr. Jeffrey Gorman, another state agency physician, affirmed Dr. Mark's opinion. (Id. at 248.)

Dr. Kenneth Odegaard began treating Plaintiff in 2002 for pain in her back, neck, and knees. (Id. at 84, 250-57.) Dr. Odegaard completed several reports for the purpose of determining Plaintiff's eligibility for cash assistance or Food Support Employment Training.

(Id. at 250-57.)  These reports were completed during the time period from July 2002 to April 2005.  (Id. at 250-57.)  Mr. Odegaard described Plaintiff's condition as cervical, thoracic, and lumbar spinal vertebral subluxation.  (Id. at 253-54, 255-57.)  In a report dated July 10, 2002, he indicated that Plaintiff could not lift, bend, stoop, or sit for prolonged periods of time.  (Id. at 253.)  He thought that Plaintiff was unable to perform any employment until May 1, 2004, at which time he thought she could work four hours a day.  (Id.)

### D.     Medical Expert's Testimony

Dr. Elmer Martinson testified as a medical expert.  (Id. at 59, 348.)  He stated that, based on MRI reports from November 2003, Plaintiff's left knee showed chondromalacia patellae and some mild degeneration of the patella femoral joint and the right knee showed grade 4 chondromalacia patellae with some cartilage loss.  (Id. at 348.)  Dr. Martinson also testified that Plaintiff was obese and had GERD, diabetes, asthma, chronic lower back pain with normal motor and sensory and straight leg raising, and mild fascial pain.  (Id. at 348-49.)  Dr. Martinson opined that, due to these conditions, Plaintiff would be limited as follows: lifting ten pounds occasionally and five pounds frequently; standing and/or walking two hours in an eight-hour workday; sitting six hours in an eight-hour workday; no kneeling, crawling, or working at heights; and requiring a sit/stand option.  (Id. at 349.)

Plaintiff's counsel asked Dr. Martinson if Plaintiff would be limited in her ability to stoop, and Dr. Martinson responded that Plaintiff could probably stoop by flexing her knees, although not repeatedly.  (Id. at 349-50.)  When asked how often Plaintiff could stoop, Dr. Martinson indicated that it would be "an infrequent stoop," meaning a few times a day.  (Id. at 350-51.)  Dr. Martinson also testified that using a cane as a stabilizing influence was probably a

6

good idea, and that it would be reasonable for Plaintiff to elevate her legs at times. (Id. at 351-52.) Dr. Martinson thought that Plaintiff should avoid dust and temperature extremes because of her asthma. (Id. at 352.)

### E. Vocational Expert's Testimony

Ms. Wilson-Jones testified that Plaintiff could perform jobs in the economy such as an information clerk, surveillance monitor, charge account clerk, and spotter. (Id. at 355.) The ALJ asked Ms. Wilson-Jones to consider a person of Plaintiff's age, education, and work experience with the following limitations: able to lift ten pounds occasionally and five pounds frequently; able to stand/walk for two hours and sit for six hours in a workday; requiring an option to sit and stand at will; able to occasionally twist and bend; no ability to crawl, kneel, or work at heights; and avoidance of excessive pollutants or extremes of heat, cold, and humidity. (Id.) Ms. Wilson-Jones testified that such an individual could perform 3,000 jobs as an information clerk; 1,500 jobs as a surveillance monitor; 3,200 jobs as an account clerk; and 3,000 jobs as a spotter/table monitor. (Id. at 355-57.) She confirmed that her testimony was consistent with the Dictionary of Occupational Tables. (Id. at 356.)

Plaintiff's attorney then questioned Ms. Wilson-Jones about how many jobs were full-time versus part-time. (Id. at 358.) The vocational expert indicated that ten percent of the jobs would be part-time rather than full-time. (Id.) Ms. Wilson-Jones indicated that her answer was based on research, including a conversation with Steven Costello, a research analyst specialist for the Covered Employment and Wages Division of the Minnesota Department of Employment and Economic Security; Internet research; and a document prepared by Norman Mastbaum, another vocational expert, based on a study he had conducted. (Id. at 358-59.) Ms. Wilson-

Jones was unable to testify regarding the education or training of Mr. Costello. (Id. at 362.) She did not know the methodology used in Mr. Mastbaum's study or in Mr. Costello's research. (Id. at 360, 363.) Plaintiff's attorney argued to the ALJ that he had been denied the opportunity to obtain Mr. Mastbaum's study in other cases before the agency. (Id. at 360-62.)

Plaintiff's attorney then questioned Ms. Wilson-Jones about a publication called Employment Outlook, which is published by the Minnesota Department of Labor. (Id. at 364.) He noted that the publication does not estimate how many jobs in each job category are part-time. (Id. at 363-64.) Ms. Wilson-Jones explained that she got this information from Mr. Mastbaum's study and her own independent research. (Id. at 365.)

Plaintiff's attorney asked whether a person who used a cane would be able to perform the jobs about which Ms. Wilson-Jones had testified. (Id. at 367.) Ms. Wilson-Jones stated that such a person could work as an information clerk, surveillance monitor, and spotter. (Id. at 367-69.) In addition, Ms. Wilson-Jones testified that a person who needed to elevate her leg once a day for an hour on an intermittent basis could still perform the jobs of information clerk, surveillance monitor, and charge account clerk, but possibly not the spotter job. (Id. at 369-70.)

**F.   The ALJ's Decision**

The ALJ concluded that Plaintiff retained the capacity to lift ten pounds occasionally and five pounds frequently, stand/walk for two hours in a workday, and sit for six hours in a workday. (Id. at 20.) In addition, Plaintiff required a sit/stand-at-will option; was limited to occasional twisting and bending; restricted from ever crawling, kneeling, or working at heights; and had to avoid excessive pollutants or temperature extremes. (Id.)

The ALJ relied on the vocational expert's testimony and the framework of the Medical-

Vocational Guidelines and concluded that a significant number of jobs accommodated Plaintiff's residual functional capacity (RFC) and vocational profile. (Id. at 23-24.) Therefore, the ALJ concluded that Plaintiff was not disabled.

## II.  STANDARD OF REVIEW

Congress has prescribed the standards by which Social Security disability benefits may be awarded. "The Social Security program provides benefits to people who are aged, blind, or who suffer from a physical or mental disability." Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). "Disability" under the Social Security Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). The claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A). The impairment must have lasted or be expected to last for a continuous period of at least twelve months, or be expected to result in death. Id. § 423(d)(1)(A).

### A.  Administrative Review

If a claimant's initial application for benefits is denied, he or she may request reconsideration of the decision. 20 C.F.R. § 404.909(a)(1). A claimant who is dissatisfied with the reconsidered decision may obtain administrative review by an ALJ. Id. § 404.929. If the claimant is dissatisfied with the ALJ's decision, he or she may request review by the Appeals Council, although review is not automatic. Id. §§ 404.967-.982. The decision of the Appeals Council, or of the ALJ if the request for review is denied, is final and binding upon the claimant unless the matter is appealed to a federal district court within sixty days after notice of the

9

Appeals Council's action.  42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. § 404.981.

   B.   **Judicial Review**

Judicial review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence in the record as a whole.  Hutsell v. Sullivan, 892 F.2d 747, 748-49 (8th Cir. 1989).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  The review is "more than a mere search of the record for evidence supporting the [Commissioner's] finding."  Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).  Rather, "'the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'"  Id. (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)).

The reviewing court must review the record and consider:

   1.   The credibility findings made by the ALJ.
   2.   The plaintiff's vocational factors.
   3.   The medical evidence from treating and consulting physicians.
   4.   The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.
   5.   Any corroboration by third parties of the plaintiff's impairments.
   6.   The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairments.

Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989) (citing Brand, 623 F.2d at 527).  A court may not reverse the Commissioner's decision simply because substantial evidence would support an opposite conclusion, Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984), and in reviewing the record for substantial evidence, the Court may not substitute its own judgment or

findings of fact, Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993). Instead, the court must consider "the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." Gavin v. Heckler, 811 F.2d 1195, 1199 (8th Cir. 1987). If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision, the court must affirm that decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

### III.   DISCUSSION

Plaintiff contends that the ALJ failed to give proper weight to the opinions of her chiropractor, did not follow Social Security Ruling (SSR) 96-9p, failed to include all of her impairments in the hypothetical question to the vocational expert, and did not substantiate the basis for the vocational expert's testimony. Defendant responds that the ALJ's decision was supported by substantial evidence in all respects.

#### A.   Dr. Odegaard's Opinion

Plaintiff argues that the ALJ failed to give proper weight to the opinion of her chiropractor, Dr. Odegaard. The ALJ gave little weight to Dr. Odegaard's opinion because Dr. Odegaard was a chiropractor, which is not an "acceptable medical source." See 20 C.F.R. § 404.1513; Cronkhite v. Sullivan, 935 F.2d 133, 134 (8th Cir. 1991). In Cronkhite, the Eighth Circuit stated, "The ALJ properly gave little weight to the opinions of [the claimant's] chiropractors because such evidence is not considered an 'acceptable source' of medical information to prove disability; it may be used only to show how an impairment affects the claimant's ability to work." Id. (citing 20 C.F.R. § 404.1513).

Furthermore, the ALJ did not entirely reject Dr. Odegaard's opinion, but found that Dr.

11

Odegaard did not evaluate Plaintiff's overall physical condition. The ALJ also noted that Dr. Odegaard provided inconsistent estimations of Plaintiff's abilities, as well as concluded that Plaintiff would actually be able to return to part-time work in 2004. "The conclusions of any medical expert may be rejected 'if inconsistent with the medical record as a whole.'" Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001). Based on other record evidence, the ALJ determined that Dr. Odegaard's limitations were too restrictive. According to other objective medical evidence, Plaintiff had no swelling or effusion in her knees and full range of motion in her feet and ankles in September 2003. At that time, x-rays showed only minimal degenerative changes within the medial compartment of the right knee. In October 2003, Plaintiff's ankles and feet were within normal limits and she had good range of motion in her shoulders and hips. She had no swelling or synovitis in her hands, wrists, elbows, or shoulders. Dr. Pereira remarked in October 2003 that Plaintiff was in no acute distress, and had no radiculopathy, negative straight leg raising, and normal deep tendon reflexes in the lower extremities. She had no leg numbness, weakness, tingling, or pain. These observations by Plaintiff's treating physicians are inconsistent with Dr. Odegaard's opinion.

Thus, for several reasons, the Court finds that substantial evidence supports the ALJ's decision to give little weight to Dr. Odegaard's opinion.

### B. Plaintiff's RFC and SSR 96-6p

A claimant's RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect . . . her capacity to do work-related physical and mental activities." SSR 96-8p. RFC is an assessment of the claimant's "maximum

remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis."[2]  Id.  The RFC assessment is "based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' – i.e., opinions about what the individual can still do despite . . . her impairment(s)." Id.

     Here, the ALJ found that Plaintiff had the RFC to lift ten pounds occasionally and five pounds frequently, stand/walk for two hours in a workday, and sit for six hours in a workday.  In addition, Plaintiff needed an option to sit and/or stand at will; could occasionally twist and bend; could never crawl, kneel, or work at heights; and had to avoid excessive pollutants or temperature extremes.  In making this RFC finding, the ALJ relied on the opinion of Dr. Martinson, the medical expert.  Dr. Martinson had reviewed the medical record and considered the limiting effect of Plaintiff's knee impairments, as well as Plaintiff's obesity, GERD, diabetes, asthma, chronic lower back pain, and mild fascial pain.  In light of the medical evidence, Dr. Martinson opined that, despite these conditions, Plaintiff retained the ability to lift ten pounds occasionally and five pounds frequently, stand and/or walk two hours in an eight-hour workday, and sit six hours in an eight-hour workday.  However, she could not kneel, crawl, or work at heights, and she needed a sit/stand option.  Dr. Martinson's opinion took into consideration all of the limitations resulting from Plaintiff's impairments, and thus, his opinion provided substantial support for the ALJ's RFC determination.  See Hudson ex rel. Jones v. Barnhart, 345 F.3d 661, 667 (8th Cir. 2003).

---

[2] A "regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR 96-8p.

Plaintiff argues that Dr. Martinson also indicated that she needed to use a cane, elevate her legs, and could only perform limited stooping. Plaintiff faults the ALJ for failing to include these limitations in his RFC assessment. However, Plaintiff misrepresents the record; Dr. Martinson did not impose these additional limitations on Plaintiff. At the hearing, Plaintiff's counsel asked Dr. Martinson if Plaintiff would be limited in her ability to stoop, and Dr. Martinson responded that she could probably stoop by flexing her knees, although not repeatedly. When asked how often Plaintiff could stoop, Dr. Martinson indicated that it would be "an infrequent stoop" and that she could do it "a few times a day." (Admin. R. at 350-51.) Dr. Martinson also testified, when asked by Plaintiff's attorney, that Plaintiff's use of a cane as a stabilizing influence was "probably a good idea," that elevating her legs was one method of managing leg edema, and that it was reasonable for Plaintiff to elevate her legs at times. Dr. Martinson did not indicate that using a cane or elevating Plaintiff's legs was a medical necessity.

The ALJ next found that Plaintiff had the RFC to perform a limited range of sedentary work. According to SSR 96-9p, an ability to stoop occasionally, meaning from very little up to one-third of the time, is required in most unskilled sedentary occupations. A restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work. Regardless, none of the jobs identified by the vocational expert required stooping. See Dictionary of Occupational Titles (DOT) Nos. 237.367-022 (information clerk), 205.367-014 (charge account clerk), 379.367-010 (surveillance-system monitor), and 739.687-010 (spotter). Therefore, even if the ALJ had accepted Plaintiff's claimed limitation that she could not stoop, she would still be able to perform the jobs identified by the vocational expert.

Finally, even if Dr. Martinson's testimony could be considered as adopting the

limitations suggested by Plaintiff, the vocational expert testified that the use of a cane would not affect the number of information clerk jobs, surveillance monitor jobs, or spotter jobs. Similarly, a limitation for leg elevation would not affect the number of information clerk jobs, charge account jobs, or surveillance monitor jobs. Therefore, even if the ALJ had accepted these limitations, Plaintiff would still have the capacity to perform a significant number of jobs.

### C.   The Hypothetical Question

Plaintiff argues that the hypothetical question did not include any limitations regarding her need for a cane, her need to elevate her legs, or her ability to stoop only a few times a day. As discussed above, substantial evidence supported the ALJ's decision to reject these limitations. Therefore, he was not required to include such limitations in the hypothetical question. See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) ("A hypothetical is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ."). Even assuming that Plaintiff had such limitations, however, she could still perform a significant number of jobs in the regional economy, as discussed above.

### D.   Substantiation of the Vocational Expert's Testimony

Plaintiff contends that the testimony of the vocational expert, Ms. Wilson-Jones, was not "substantiated by providing the written documentation purportedly relied upon" (Pl.'s Mem. Supp. Mot. Summ. J. at 14-15), and thus, her testimony could not constitute substantial evidence. Plaintiff specifically challenges Mr. Mastbaum's report and Mr. Costello's credentials.

The ALJ was allowed to rely on Ms. Wilson-Jones's testimony based simply on her status as a vocational expert. See 20 C.F.R. § 404.1560. Ms. Wilson-Jones is a certified rehabilitation counselor, qualified rehabilitation counselor, vocational expert, and personal and

professional coach. (Admin. R. at 52.) She is employed as the President of Selective Placement Services and has specialized in the rehabilitation of injured workers and making career placements for almost thirty years. (Id. at 52, 366.) Considering her experience, she was qualified to testify about Plaintiff's ability to work, and indeed, Plaintiff does not challenge Ms. Wilson-Jones's personal qualifications.

Regarding Ms. Wilson-Jones's inability to "substantiate" Mr. Mastbaum's study and Mr. Costello's statements upon questioning from Plaintiff's counsel, Plaintiff has provided no authority to support her position that Ms. Wilson-Jones's testimony was not substantial evidence as a result. Indeed, a vocational expert may offer evidence at an administrative hearing "even though inadmissible under rules of evidence applicable to court procedure." 42 U.S.C. § 405(b)(1). Thus, Plaintiff's attempt to challenge the foundation of Ms. Wilson-Jones's testimony must be rejected. In addition, it cannot be overlooked that Ms. Wilson-Jones also conducted her own independent research to arrive at her conclusions. Consequently, the ALJ did not err in relying on Ms. Wilson-Jones's testimony.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 17) be **DENIED**; and
2. Defendant's Motion for Summary Judgment (Doc. No. 20) be **GRANTED**.

Dated: February 25, 2008

                                           s/ Susan Richard Nelson
                                           SUSAN RICHARD NELSON
                                           United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **March 11, 2008**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.